O

# United States District Court
# Central District of California

YESSENIA ALVAREZ CABANILLAS,

    Plaintiff,

v.

GEO GROUP, INC. et al.,

    Defendants.

Case № 5:25-cv-03484-ODW (PVCx)

**ORDER GRANTING UNOPPOSED *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE [2]**

## I.    INTRODUCTION

Petitioner Yessenia Alvarez Cabanillas brings this petition for a writ of habeas corpus against Respondents Geo Group, Inc., a Florida corporation, operating the Adelanto Immigration and Customs Enforcement ("ICE") Processing Center; Moises Becerra, ICE Acting Field Office Director; Kristi Noem, Secretary of the Department of Homeland Security ("DHS"); and Pamela Bondi, U.S. Attorney General. (Pet. ¶¶ 1, 11–15, Dkt. No. 1.) Petitioner moves *ex parte* for an order requiring her release from custody. (Ex Parte Appl. ("TRO") Dkt. No. 2; Proposed Order ISO TRO ("Proposed Order") 1, Dkt. No. 2-6.) Petitioner also requests that the Court enjoin Respondents from transferring Petitioner outside of this District pending the Court's final adjudication of this matter. (Proposed Order at 2.) Respondents do not timely oppose the request. For the reasons discussed below, the Court **GRANTS** the TRO.

## II.   BACKGROUND

Petitioner is a citizen of Peru.  (Pet. ¶ 16.)  On September 15, 2023, she entered the United States and was apprehended near Nogales, Arizona.  (*Id.*)  At that time, she was detained overnight and released the next morning on her own recognizance pursuant to the Attorney General's discretionary authority under 8 U.S.C. § 1226(a).  (*Id.* ¶¶ 2, 16.)  The conditions of her release required her to check-in with ICE.  (*Id.* ¶ 2.)  DHS subsequently served Petitioner with a Notice to Appear and placed her in removal proceedings.  (*Id.* ¶ 17.)  Her master calendar hearing is scheduled for June 4, 2026, before the immigration court in San Francisco, California.  (*Id.* ¶ 17.)

Petitioner complied with the terms of her initial release.  (*Id.* ¶ 18.)  However, on October 15, 2025, Petitioner missed a single ICE check-in appointment.  (*Id.*)  On December 15, 2025, Petitioner appeared voluntarily before ICE officers, accompanied by her attorney, to explain her failure to check-in.  (*Id.* ¶ 19.)  During that meeting, Petitioner told the ICE officer that she missed her October check-in because her daughter in Peru suffered an injury and Petitioner experienced significant distress because of her daughter's injury.  (*Id.* ¶ 20.)  Petitioner's counsel also explained that Petitioner experienced anxiety and depression in October, for which she was taking medication and that affected her mental clarity during that time.  (*Id.*)

Nevertheless, that same day, ICE told Petitioner that she would be detained for missing the October check-in.  (*Id.*)  Petitioner's counsel requested a lesser sanction, such as increased reporting requirements or an ankle monitor, but ICE officers responded that no alternative was available.  (*Id.* ¶ 21.)  ICE stated that "the decision has already been made," and that because "Petitioner waited too long between [the] October and December check-ins, agency policy required detention."  (*Id.*)  Without prior notice or a hearing, and without any determination by a neutral decision-maker that re-detention was warranted, the DHS "abruptly re-arrested Petitioner and deprived her of her liberty."  (*Id.* ¶ 1.)

ICE told Petitioner that she would be transferred to Bakersfield, but that she might be subject to further transfer depending on bed availability. (*Id.* ¶ 22.) ICE then formally arrested Petitioner. (*Id.* ¶ 24.) On December 19, 2025, Petitioner's counsel was unable to locate her using the ICE detainee locator system. (*Id.* ¶ 26.) Later that day, Petitioner's counsel was informed that Petitioner is being held at Adelanto ICE Processing Center. (*Id.*)

Based on these allegations, on December 22, 2025, Petitioner filed a Petition for Writ of Habeas Corpus on the grounds that her detention violates her Fifth Amendment right to due process and 8 U.S.C § 1226(a). (*Id.* at 21–22.) That same day, Petitioner filed this Application for a Temporary Restraining Order and Preliminary Injunction. (TRO.) Petitioner requests that the Court order Respondents to release Petitioner from custody. (Proposed Order 1.) Petitioner also requests that the Court enjoin Respondents from relocating Petitioner outside of the Central District of California pending final resolution of this case. (*Id.* at 2.) Finally, Petitioner requests that the Court issue a preliminary injunction in this case. (*Id.*) Respondents failed to timely oppose.

### III.     LEGAL STANDARD

A temporary restraining order ("TRO") is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). The standard for issuing a TRO is "substantially identical" to that for a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Pursuant to Federal Rule of Civil Procedure ("Rule") 65, a court may grant preliminary injunctive relief to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b). To obtain relief, a plaintiff must meet the "*Winter*" factors: (1) the plaintiff "is likely to succeed on the merits"; (2) the plaintiff "is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [the plaintiff's] favor"; and

(4) "an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20).

Courts in the Ninth Circuit evaluate the *Winter* factors on a sliding scale approach, such that "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under the sliding scale approach, a plaintiff is entitled to a preliminary injunction if he has raised "serious questions going to the merits . . . and the balance of hardships tips sharply in [his] favor," "so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135.

## IV. DISCUSSION

The Court first considers whether it has jurisdiction, then turns to the merits of Petitioner's TRO.

### A. Jurisdiction

The Court must first consider whether it has jurisdiction to review Petitioner's TRO. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction."). Under 8 U.S.C. § 1252(g), a court does not have jurisdiction to review "any cause or claim" challenging the execution of "removal orders." However, a "district court may consider a purely legal question that does not challenge" the execution of a removal order. *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004).

Here, Petitioner raises a question of law as to whether her detention complies with due process and the requirements proscribed in § 1226(a). (TRO 5–9.) She does not challenge the Attorney General's discretionary authority to execute removal proceedings. (*See generally id.*) Moreover, the Court does not review or disturb Petitioner's underlying order of removal. Instead, the Court confines its analysis to the narrow legal question properly before it: whether Petitioner's detention under § 1226(a) entitles her to release from custody. As the Court addresses only the legality

of Petitioner's detention—not the merits, validity, or execution of her removal order—the Court has jurisdiction to review Petitioner's TRO. *Hovsepian*, 359 F.3d at 1155.

Moreover, under 28 U.S.C. § 2241, the Court has authority to adjudicate a habeas corpus petition alleging that a person is being held in custody "in violation of the Constitution or laws or treaties of the United States." "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Here, Petitioner seeks immediate release from custody, which she contends violates her constitutional rights. (Pet. ¶¶ 33–35.) Thus, Petitioner properly invokes the Court's habeas jurisdiction.

**B.  Merits of the TRO: *Winter* Factors**

Having determined that the Court has jurisdiction over Petitioner's TRO, the Court now turns to its merits under the *Winter* factors.

*1.  Likelihood of Success on the Merits*

The first *Winter* factor "is the most important," and "is especially important when a plaintiff alleges a constitutional violation and injury." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023). Petitioner argues that she is likely to succeed on the merits because her continued detention violates her due process rights. (TRO 6–8.) She contends that Respondents failed to identify "any change in circumstances warranting revocation of Petitioner's release," such that Petitioner is "a flight risk or danger to the community." (*Id.* at 6.) Petitioner argues that her "preemptive detention undermines the procedural safeguards designed to protect released individuals, particularly when they have consistently complied with reporting requirements." (*Id.*)

The Court agrees that Petitioner's detention violates her due process rights. The Fifth Amendment protects all persons from being "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. It is settled law that noncitizens within the United States are entitled to due process "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*,

533 U.S. 678, 693 (2001); *see Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of [removal] proceedings."). The government's release of an individual from detention creates "an implicit promise' that the individual's liberty will be revoked only if they fail to abide by the conditions of their release." *Calderon v. Kaiser*, No. 25-cv-06695-AMO, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)).

Here, when Petitioner was released from initial detention, she acquired a liberty interest which entitles her to due process. *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. Mar. 3, 2025) ("The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty."). Thus, the procedures used against her must adequately protect that interest. *See Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) (holding that once an alien "passed through our gates," they "may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law"). As Respondents detained Petitioner "without notice, without a hearing, and without any determination by a neutral decision-maker that a material change in circumstances rendered her a flight risk or danger to the community," (TRO 5–6), Petitioner shows a likelihood of success on the merits of her due process claim.

   *2. Likelihood of Irreparable Harm*

As to the second *Winter* factor, Petitioner contends that she will suffer irreparable harm in the absence of a TRO because she will continue to be unlawfully detained. (*Id.* at 8.) "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). "[I]n cases involving a constitutional claim, a likelihood of success on the merits usually establishes irreparable harm." *Baird*, 81 F.4th at 1048.

Here, as discussed above, Petitioner brings a constitutional due process claim which is likely to succeed on the merits. Accordingly, the Court finds that she has established irreparable harm, and thus the second *Winter* factor also weighs in favor of temporary injunctive relief.

### 3. Balance of Equities and Public Interest

The last two *Winter* factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). "Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution." *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) (citing *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005)). "[T]he public has a strong interest in upholding procedural protections against unlawful detention," as well as "in the efficient allocation of the government's fiscal resources." *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020).

The balance of hardships tips strongly in Petitioner's favor as she would suffer great hardship if the Court were to deny her TRO. *See Cottrell*, 632 F.3d at 1134–35 (requiring the balance of hardships to "tip sharply" in the moving party's favor). Specifically, she would continue to be detained for an indefinite amount of time without due process, despite her willingness to cooperate and follow reporting requirements. (TRO 8.). In contrast, Respondents "cannot reasonably assert" they are "harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Servs.*, 753 F.2d 719, 727 (9th Cir. 1983). Thus, the last two *Winter* factors also weigh in favor of an injunction.

Having found that all *Winter* factors weigh in favor of injunctive relief, the Court **GRANTS** Petitioner's TRO.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Petitioner's TRO. (Dkt. No. 4.) It is hereby **ORDERED** that:

- Respondents shall **IMMEDIATELY RELEASE** Petitioner;
- Respondents are **ENJOINED** from re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice describing the change in circumstances requiring her re-detention and a timely hearing. At any such hearing, Respondents shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a risk of flight or danger to the community;
- Respondents are **ENJOINED** from relocating Petitioner outside of the Central District of California pending final resolution of this case; and
- Respondents shall **SHOW CAUSE**, in writing only, to be received by the Court no later than **December 31, 2025**, as to why the Court should not issue a preliminary injunction in this case. Petitioner may file a reply by **January 3, 2026, at 10:00 a.m.** The Court **SETS** a hearing on the preliminary injunction for **January 6, 2026, at 11:00 a.m.**, via Zoom.

**IT IS SO ORDERED.**

December 24, 2025

                                                                    _____
                                                                    **OTIS D. WRIGHT, II
                                                                    UNITED STATES DISTRICT JUDGE**

8